UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISAIAH MCKINNLEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ALLSAINTS USA LIMITED CORP.,

Defendant.

---

Case No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, ISAIAH MCKINNLEY ("Plaintiff" or "Mr. McKinnley"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq., of JOSEPH & NORINSBERG, LLC, as and for his putative class action complaint against Defendant, ALLSAINTS USA LIMITED CORP. ("ALLSAINTS" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff ISAIAH McKINNLEY is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). Plaintiff has been diagnosed with retinitis pigmentosa, a progressive retinal disorder that substantially limits his vision. As documented in Exhibit A, dated June 2025, Mr. McKinnley relies upon assistive

technology, including screen-reading software and magnification tools, to independently access digital content.

2. Plaintiff brings this action against ALLSAINTS USA LIMITED CORP. for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. Defendant sells apparel, footwear, accessories, and related merchandise to consumers through its retail operations and its public-facing website, www.allsaints.com (the "Website"). Plaintiff sought to use the Website to pre-shop specific AllSaints merchandise before traveling to Defendant's AllSaints Meatpacking retail store, located at 402 West 13th Street, New York, New York 10014, where Plaintiff desired to shop for and purchase the merchandise in person if practicable. If an in-store purchase was not practicable, Plaintiff was prepared to purchase the desired merchandise through Defendant's Website.

3. Specifically, Plaintiff desired Defendant's Hawthorne Slim-Fit Ramskull Shirt. Before traveling to Defendant's Meatpacking store or otherwise completing a purchase, Plaintiff wanted to determine the colors and sizes in which the Hawthorne Slim-Fit Ramskull Shirt was available so that he could determine whether Defendant offered the shirt in a size and color suitable to him. Plaintiff was also specifically interested in purchasing Defendant's Destroy Loose-Straight Leg Jeans. With respect to the Destroy Loose-Straight Leg Jeans, Plaintiff wanted to determine the available colors and sizes and obtain laundering and care information so that he could evaluate the product and make an informed purchasing decision.

4. On July 10, 2026, July 11, 2026, and again on September 15, 2026, Plaintiff visited

Defendant's Website using the assistive technology upon which he relies. On each occasion, Plaintiff was engaged in genuine pre-shopping for the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans and attempted to obtain the specific product information described above. Plaintiff intended to use the Website to obtain that information before traveling to Defendant's Meatpacking retail store at 402 West 13th Street in Manhattan to shop for and, if suitable and available, purchase the desired products. Plaintiff was equally prepared to purchase the products through Defendant's Website if purchasing them at the physical store proved impracticable.

5. Plaintiff could not accomplish those objectives. During his July 10, July 11, and September 15, 2026 visits, accessibility barriers interfered with Plaintiff's use of the assistive technology upon which he relies and prevented him from independently accessing major sections and portions of the Website and obtaining the specific product information he sought. With respect to the Hawthorne Slim-Fit Ramskull Shirt, Plaintiff could not independently discern the available colors and sizes. With respect to the Destroy Loose-Straight Leg Jeans, Plaintiff likewise could not independently ascertain the available colors and sizes or obtain the laundering and care information he wanted to review before making his purchasing decision.

6. These accessibility barriers did substantially more than inconvenience Plaintiff. They prevented Plaintiff from independently obtaining material information concerning two specific products he actually desired to purchase and frustrated his ability to pre-shop those products before traveling to Defendant's Meatpacking retail store. The same barriers also

interfered with Plaintiff's ability to use the Website as an alternative means of completing his contemplated purchases. Because Plaintiff cannot visually compensate for digital information and functionality that are not properly communicated through the assistive technology upon which he relies, the barriers deprived him of the opportunity afforded to sighted customers to independently evaluate Defendant's products and make an informed purchasing decision.

7. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Website so that it is fully and equally accessible to and independently usable by Plaintiff and other blind and visually impaired individuals. Defendant's denial of full and equal access to its Website, and to the goods, services, privileges, advantages, and accommodations offered through and facilitated by the Website, constitutes discrimination against Plaintiff on the basis of his disability in violation of the ADA.

8. Congress has issued a clear national mandate to eliminate discrimination against individuals with disabilities, including barriers that interfere with full participation, independent living, economic self-sufficiency, and equal opportunity. New York State and New York City law similarly protect persons with disabilities against discriminatory barriers that deprive them of equal access to goods and services offered to the public.

9. The accessibility barriers Plaintiff encountered directly frustrated the concrete purchasing purpose for which he visited Defendant's Website. Plaintiff was not merely browsing Defendant's Website generally or visiting it without a definite shopping objective. Plaintiff

had identified two particular products that he desired, the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans, and sought specific information concerning those products so that he could make an informed purchasing decision before traveling to Defendant's Meatpacking retail store. Plaintiff's inability to independently determine such fundamental information as available colors and sizes and, with respect to the Destroy Loose-Straight Leg Jeans, laundering and care information, prevented Plaintiff from completing the pre-shopping process and proceeding with his contemplated purchases on the same terms as sighted consumers.

10. Plaintiff remains specifically interested in purchasing the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans and in patronizing Defendant's Meatpacking retail store at 402 West 13th Street, New York, New York 10014. Upon information and belief, these particular AllSaints products are proprietary to Defendant and are not available for purchase from unaffiliated retailers or competing retail establishments. Accordingly, Plaintiff cannot simply obtain the specific merchandise he desires from an unrelated competing retailer, making meaningful access to Defendant's Website and retail operations particularly important to his ability to obtain these products.

11. Plaintiff intends to return to Defendant's Website to obtain the product information he was previously unable to access, including the available colors and sizes of the Hawthorne Slim-Fit Ramskull Shirt and the available colors, sizes, and laundering and care information concerning the Destroy Loose-Straight Leg Jeans. Plaintiff intends to use that information to complete his pre-shopping and, if the products are suitable and available,

travel to Defendant's Meatpacking store to make his intended purchases. If purchasing the desired products at the physical store is not practicable, Plaintiff intends to purchase them through Defendant's Website. Plaintiff is presently deterred from independently and fully using the Website because of the accessibility barriers he personally encountered on July 10, July 11, and September 15, 2026, and reasonably expects to encounter those barriers again unless and until Defendant remedies them.

12. Unless Defendant remedies the accessibility barriers complained of herein, Plaintiff will continue to be denied the opportunity to independently investigate the particular AllSaints merchandise he desires, obtain the information necessary to make informed purchasing decisions, use the Website to facilitate a visit to Defendant's Meatpacking retail store, and, where appropriate, purchase Defendant's products online. Defendant's continuing failure to provide equal access therefore threatens Plaintiff with repeated injury when he returns to the Website for the concrete shopping purposes alleged herein.

13. Plaintiff accordingly seeks prospective injunctive relief requiring Defendant to take the measures necessary to make its Website fully and equally accessible to Plaintiff and other blind and visually impaired consumers and to adopt and maintain policies, practices, and procedures reasonably calculated to ensure continued accessibility of the Website.

## **JURISDICTION AND VENUE**

14. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et seq.

15. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state and local law claims, including those arising under the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law §§ 40-c and 40-d ("NYCRL"), because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business within this District, operates and makes its goods and services available to consumers within this District through its interactive Website, www.allsaints.com, and maintains its AllSaints Meatpacking retail store at 402 West 13th Street, New York, New York 10014, within the Southern District of New York. Defendant's own store locator identifies the AllSaints Meatpacking location at that address.

17. Plaintiff accessed and attempted to use Defendant's Website from his residence in New York County on July 10, 2026, July 11, 2026, and September 15, 2026. Those visits were undertaken for the concrete purpose of pre-shopping the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans before traveling to Defendant's Meatpacking retail store at 402 West 13th Street to shop for and, if suitable and available, purchase the desired products. Plaintiff encountered the discriminatory accessibility barriers complained of herein while accessing the Website from within this District. Accordingly, a substantial part of the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

18. Defendant's connections to this District are not limited to the accessibility of its Website to New York consumers. Defendant maintains a physical AllSaints retail location within this District at 402 West 13th Street, New York, New York 10014, the very store Plaintiff desired to patronize after using Defendant's Website to pre-shop the specific merchandise identified herein. AllSaints itself presently identifies this location as its "AllSaints Meatpacking" store. Defendant therefore avails itself of the New York retail market both through its physical retail operations and through the Website Plaintiff attempted to use in connection with his contemplated patronage of that store.

19. The Second Circuit has recognized, in the personal-jurisdiction context, the significance of commercial activity purposefully directed into New York. See *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010). There, the Court considered a defendant's shipment of merchandise into New York together with the associated business's broader commercial activity involving New York in determining that personal jurisdiction was proper. Id. The connection to this District alleged here is more direct: Defendant maintains a physical retail store in Manhattan, and Plaintiff's challenged use of Defendant's Website occurred within this District in furtherance of his intended patronage of that Manhattan retail location.

20. Plaintiff's claims therefore bear a direct relationship to this District. Plaintiff resides in New York County; Plaintiff accessed Defendant's Website from within New York County; Plaintiff encountered the alleged barriers from within this District on three separate dates; Plaintiff used the Website to pre-shop two specifically identified AllSaints products; and

Plaintiff intended to use the information obtained from the Website to facilitate his contemplated visit to and purchase from Defendant's Meatpacking retail store at 402 West 13th Street. Defendant's official store information confirms that the Meatpacking store is located at that address in Manhattan.

21. Accordingly, jurisdiction and venue are proper in this District because Plaintiff's federal claims arise under the ADA, his state and local claims arise from the same nucleus of operative facts, Defendant conducts business and maintains a physical retail location within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES

22. Plaintiff, **ISAIAH McKINNLEY**, is and was at all relevant times a resident of New York County, New York.

23. Plaintiff is legally blind and visually impaired and qualifies as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). Plaintiff has been diagnosed with retinitis pigmentosa, a progressive retinal disorder that substantially limits his vision. As documented in Exhibit A, dated June 2025, Plaintiff relies upon assistive technology, including screen-reading software and magnification tools, to independently access digital content. Because of his visual disability, Plaintiff requires websites and their content, controls, and functionality to be compatible with the assistive technology upon which he relies.

24. Upon information and belief, Defendant ALLSAINTS USA LIMITED CORP. ("ALLSAINTS" or "Defendant") is a business entity that operates AllSaints retail operations in the United States and offers clothing, footwear, accessories, and related merchandise to consumers through physical retail locations and through its public-facing Website, www.allsaints.com. Defendant conducts substantial business in New York and maintains an AllSaints Meatpacking retail store located at 402 West 13th Street, New York, New York 10014. AllSaints presently identifies that address on its official website as its "AllSaints Meatpacking" store

25. Defendant offers consumers access to its merchandise and retail services through its Website, www.allsaints.com. The Website permits consumers, including consumers located within New York, to investigate and browse Defendant's merchandise and obtain information regarding products offered for sale. The Website thereby provides consumers with information useful in deciding what merchandise to purchase and whether to complete their shopping through Defendant's physical retail operations or online.

26. Defendant's Website is directly connected to Plaintiff's intended patronage of Defendant's physical retail establishment in Manhattan. Plaintiff specifically used the Website to pre-shop the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans before traveling to Defendant's AllSaints Meatpacking store at 402 West 13th Street in New York City. Defendant's official store information confirms that the Meatpacking location is a physical AllSaints retail store at that address. Plaintiff intended to determine pertinent product information, including available colors and sizes and, with respect to the Destroy

Loose-Straight Leg Jeans, laundering and care information, before traveling to the store to shop for and, if suitable and available, purchase the merchandise.

27. Defendant's Website therefore was not an unrelated digital service as to Plaintiff. Rather, Plaintiff sought to use the Website as a means of accessing information concerning specific AllSaints products he desired and facilitating his contemplated patronage of Defendant's physical Manhattan retail location. If purchasing the desired merchandise at the Meatpacking store proved impracticable, Plaintiff was prepared to purchase the products through Defendant's Website instead.

28. Upon information and belief, Defendant owns, operates, controls and/or maintains the Website and is responsible for establishing and implementing the policies, practices, and procedures governing the accessibility of the goods and services made available to consumers through the Website. Defendant has an ongoing obligation to afford individuals with disabilities, including Plaintiff and other blind and visually impaired consumers, full and equal access to the goods, services, privileges, advantages, and accommodations it offers to the public.

29. Despite that obligation, Plaintiff encountered accessibility barriers when attempting to use Defendant's Website on July 10, 2026, July 11, 2026, and September 15, 2026. Those barriers materially interfered with Plaintiff's ability to independently obtain information regarding the particular products he desired and frustrated his ability to use the Website to pre-shop merchandise in anticipation of visiting Defendant's Meatpacking retail store or, alternatively, completing his purchases online.

## NATURE OF ACTION

30. This action arises under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., which prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by places of public accommodation. The ADA was enacted to eliminate discrimination against individuals with disabilities and to ensure that persons with disabilities are afforded equal opportunity to participate in and benefit from the goods and services made available to the public.

31. The Internet has become an integral means by which businesses communicate with consumers and provide access to their goods and services. Retail websites permit consumers to investigate merchandise, review product characteristics, determine available colors and sizes, obtain pricing and care information, locate physical stores, assess product availability, and, where offered, purchase merchandise without entering a physical location.

32. Websites also serve an important pre-shopping function for consumers who intend to patronize physical retail establishments. Consumers routinely use retail websites before traveling to a store to identify desired merchandise, obtain information concerning available products and options, determine whether particular merchandise is suitable for their needs, and make informed decisions concerning whether and where to complete a purchase. Accordingly, inaccessible website content can interfere not only with online transactions but also with a blind consumer's ability to independently investigate and

access the goods and services offered through a retailer's physical locations.

33. Blind and visually impaired individuals commonly use assistive technologies to access information presented through websites. Among these technologies are screen-reading programs, which communicate electronically presented information audibly and permit blind users to navigate and interact with digital content without relying upon visual presentation.

34. Screen-reading technology, however, depends upon websites being designed and maintained so that information, controls, and functionality are meaningfully communicated to assistive technology. Information that is visually apparent to a sighted user may not be conveyed to a blind user when the underlying website content or interactive functionality is not properly made accessible.

35. For example, when the purpose or identity of an interactive control is not meaningfully communicated to assistive technology, a blind user may encounter the control without being able to independently determine what it does. Likewise, when information concerning merchandise, product options, images, forms, links, menus, or other interactive features is not meaningfully accessible, a blind consumer may be unable to obtain information or perform functions that are readily available to sighted consumers.

36. The consequences of these barriers are particularly significant in the retail context. Information concerning a product's characteristics, available variations, sizing, color, care requirements, availability, and other attributes may be material to a consumer's decision whether to purchase the product. When such information cannot be independently obtained

through assistive technology, a blind consumer may be forced either to seek assistance from another person, proceed without information available to sighted consumers, or abandon the shopping activity altogether.

37. Dependence upon sighted assistance is not equivalent to independent access. The ability to investigate merchandise, evaluate products, make purchasing decisions, and engage in shopping activities privately and independently constitutes an important component of equal access to the goods and services offered to consumers.

38. Website accessibility is therefore integral to ensuring that blind and visually impaired individuals have an equal opportunity to obtain information and utilize goods and services offered to the public. Where a website operates in connection with a physical place of public accommodation, inaccessible digital features may additionally interfere with the ability of blind consumers to investigate merchandise and services in advance of a contemplated visit to the physical establishment.

39. The Web Content Accessibility Guidelines ("WCAG") provide established technical criteria directed toward making digital content more accessible to persons with disabilities, including individuals who use screen-reading and other assistive technologies. Among other things, accessibility principles address whether digital content is perceivable and operable and whether information and interactive functionality can be meaningfully understood and used through assistive technology.

40. Website accessibility is not achieved merely because some portions of a website can be reached by a blind user. Meaningful accessibility requires that the content and functionality

necessary to use the goods and services offered through the website be available in a manner that permits individuals using assistive technology to independently perceive relevant information, navigate the website, understand interactive controls, and perform the functions offered to sighted consumers.

41. When barriers prevent blind and visually impaired consumers from independently accessing material product information or using essential website functionality, those consumers do not receive an experience equivalent to that made available to sighted consumers. Such barriers can impede their ability to investigate products, make informed purchasing decisions, pre-shop merchandise before visiting a physical retail establishment, and complete transactions independently.

42. Title III of the ADA seeks to prevent precisely this type of unequal access to the goods, services, privileges, advantages, and accommodations offered by covered places of public accommodation. Businesses offering goods and services to the public must afford individuals with disabilities an equal opportunity to obtain and benefit from those goods and services and may not employ methods of administration that result in unlawful discrimination on the basis of disability.

43. The accessibility requirements implicated by this action are consequently not concerned with providing blind consumers with preferential treatment. They concern whether individuals with visual disabilities are afforded a meaningful and independent opportunity to access the same goods, services, information, privileges, and advantages that businesses make available to sighted members of the public.

## STATEMENT OF FACTS

44. Plaintiff ISAIAH McKINNLEY is legally blind and suffers from retinitis pigmentosa, a progressive retinal condition that substantially limits his vision and his ability to perceive information presented visually. Because of his disability, Plaintiff relies upon assistive technology, including screen-reading software, to independently access, navigate, and obtain information from websites.

45. Plaintiff uses the Internet, including retail websites, as an important means of independently investigating merchandise before making purchasing decisions. For Plaintiff, the ability to pre-shop online is particularly important because an accessible retail website enables him to obtain information about desired merchandise before traveling to a physical store and to determine whether particular products are suitable for his needs.

46. Plaintiff's interest in Defendant and its merchandise arose from a genuine desire to expand and improve his personal wardrobe. Plaintiff's existing wardrobe consisted largely of ordinary, run-of-the-mill jeans and included only two pairs of sneakers, both approximately five years old. Plaintiff wanted to move beyond the limited clothing he had been wearing and begin building a more varied and stylish wardrobe for himself.

47. Plaintiff first learned about AllSaints through a close friend who is also visually impaired and who attends programs and courses offered to blind and visually impaired individuals at VISIONS on 23rd Street and Lighthouse on 61st Street in New York City. Plaintiff's friend spoke favorably about AllSaints and recommended the retailer to Plaintiff, describing its selection and style of clothing, its retail presence

in New York City, and its website, www.allsaints.com. Based upon that personal recommendation, Plaintiff became interested in AllSaints and decided to investigate its merchandise for himself as a potential source of clothing for the wardrobe he was seeking to build.

48. Plaintiff thereafter visited Defendant's Website for an actual shopping purpose. He was not drawn to www.allsaints.com merely because it was a retail website, nor did he visit the Website simply to determine whether it was accessible to blind consumers. Rather, based upon his friend's recommendation, Plaintiff wanted to explore AllSaints' merchandise for himself, identify clothing that appealed to his personal tastes, and determine whether AllSaints offered items he would want to add to his wardrobe.

49. While shopping Defendant's Website, Plaintiff became specifically interested in two AllSaints products: the Hawthorne Slim-Fit Ramskull Shirt and the Destroy Loose-Straight Leg Jeans. These were not products selected arbitrarily or merely as examples of merchandise available on the Website. They were particular items that appealed to Plaintiff as clothing he wanted to add to the wardrobe he was attempting to improve and expand.

50. The Hawthorne Slim-Fit Ramskull Shirt appealed to Plaintiff as the type of more distinctive shirt he wanted to add to his otherwise limited wardrobe. Plaintiff wanted this particular AllSaints shirt, rather than merely a generic shirt of the same general type, and wanted to investigate it further before spending his money on it. In

particular, Plaintiff wanted to determine the colors in which the shirt was offered and the sizes available for purchase so that he could determine whether Defendant offered the shirt in a color he preferred and a size suitable to him.

51. Plaintiff was likewise specifically interested in the Destroy Loose-Straight Leg Jeans as part of his effort to expand his clothing choices beyond the ordinary jeans he already owned. Before purchasing the jeans, Plaintiff wanted to determine the colors in which they were offered, their available sizes, and the laundering and care instructions applicable to the product. This information mattered to Plaintiff because he wanted to determine whether the jeans were offered in options suitable to him and how they would have to be maintained before deciding whether to spend his money on them.

52. Plaintiff therefore had a concrete reason for visiting Defendant's Website and investigating these particular products. He wanted AllSaints merchandise following his friend's recommendation, had identified two particular AllSaints products that interested him as part of his effort to improve his wardrobe, and needed additional information concerning those products before making his contemplated purchasing decisions.

53. Plaintiff chose Defendant's Website because he was specifically interested in AllSaints merchandise and because the Website provided a means for him to investigate the particular AllSaints products he desired before traveling to Defendant's New York City retail location. Plaintiff intended to use the Website as

an ordinary part of his shopping process: to investigate the merchandise, learn about the available product options, determine whether the products suited his preferences and needs, and then make an informed purchasing decision.

54. More particularly, Plaintiff intended to use Defendant's Website to pre-shop the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans before traveling to Defendant's AllSaints Meatpacking retail store located at 402 West 13th Street, New York, New York 10014. Plaintiff preferred to obtain the necessary product information online and thereafter visit that physical retail location to shop for and purchase the products if they were suitable and available.

55. Plaintiff's purchasing interest was not dependent upon completing the transaction inside the physical store. If purchasing the desired merchandise at Defendant's Meatpacking store proved impracticable, including if Plaintiff could not conveniently obtain the particular products he desired there, Plaintiff was willing and intended to use Defendant's Website to purchase the merchandise online.

56. In furtherance of this concrete shopping objective, Plaintiff accessed Defendant's Website, www.allsaints.com, on July 10, 2026. Plaintiff used the screen-reading technology upon which he relies and attempted to investigate the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans and obtain the information necessary to evaluate those products before making his contemplated purchases.

57.

58. While investigating the Hawthorne Slim-Fit Ramskull Shirt, Plaintiff attempted to obtain information concerning the product's available colors and sizes. Plaintiff was unable, using his screen reader, to independently discern the available color and size options presented through the Website. Consequently, Plaintiff could not independently determine which colors Defendant offered, which sizes were available, or whether the shirt was offered in a combination of color and size suitable to him.

59. Plaintiff encountered similar difficulty when attempting to investigate the Destroy Loose-Straight Leg Jeans. Plaintiff sought to determine the colors and sizes in which the jeans were available and to obtain the laundering and care information for the product. Using his screen reader, Plaintiff was unable to independently discern the available color and size information or adequately obtain the laundering and care information he sought.

60. These difficulties were material to Plaintiff's contemplated purchases. Without meaningful access to the color and size information concerning the Hawthorne Slim-Fit Ramskull Shirt, Plaintiff could not determine whether the particular shirt he desired was offered in an option suitable to him. Likewise, without meaningful access to the available colors and sizes and the laundering and care information concerning the Destroy Loose-Straight Leg Jeans, Plaintiff could not independently evaluate whether that product was suitable for his needs.

61. Plaintiff did not abandon his interest after his initial attempt. On July 11, 2026, Plaintiff again accessed Defendant's Website using his assistive technology and again attempted to

pre-shop the merchandise he desired. Plaintiff continued to seek the product information necessary to evaluate the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans and to determine whether to proceed to Defendant's Meatpacking store to purchase them.

62. During Plaintiff's July 11, 2026 visit, Plaintiff again remained unable to independently obtain through his assistive technology the material product information he sought. Plaintiff could not independently discern the available colors and sizes necessary to evaluate the Hawthorne Slim-Fit Ramskull Shirt and likewise could not independently obtain the color, size, and laundering and care information he sought concerning the Destroy Loose-Straight Leg Jeans.

63. Plaintiff's repeated inability to obtain this information interfered with the specific pre-shopping purpose for which he accessed the Website. Plaintiff could not determine, with the independence afforded to a sighted consumer, whether the products were offered in the variations suitable to him or obtain the information he considered necessary before traveling to Defendant's physical store to make his intended purchases.

64. Plaintiff nevertheless remained interested in the two products. On September 15, 2026, more than two months after his July attempts, Plaintiff returned to Defendant's Website and again attempted to use his assistive technology to obtain the information necessary to continue shopping for the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans.

65. During this subsequent visit, Plaintiff continued to experience barriers to independently accessing major sections and portions of Defendant's Website necessary to accomplish his shopping objectives. Plaintiff remained unable to independently obtain through his screen reader the information he sought concerning the available colors and sizes of the Hawthorne Slim-Fit Ramskull Shirt and the available colors, sizes, and laundering and care information concerning the Destroy Loose-Straight Leg Jeans.

66. Plaintiff's experiences on July 10, July 11, and September 15, 2026 prevented him from independently completing the pre-shopping activity he undertook in anticipation of patronizing Defendant's Meatpacking retail store. The same accessibility problems also impeded Plaintiff's ability to use Defendant's Website as an alternative means of purchasing the products if obtaining them in person proved impracticable.

67. As a sighted consumer can visually review the product information, options, and other content presented through Defendant's Website, Plaintiff's inability to obtain that information independently through the assistive technology necessitated by his disability subjected him to a materially different shopping experience. Plaintiff was left unable to independently make the informed product selections and purchasing decisions Defendant's Website permits sighted consumers to make.

68. Plaintiff does not contend that he personally identified or diagnosed the technical coding conditions responsible for his inability to obtain this information. Plaintiff experienced those conditions functionally: he attempted, using the screen-reading technology

necessitated by his blindness, to obtain specific information concerning specific products he desired to purchase and repeatedly was unable to independently obtain the information necessary to accomplish his shopping objectives.

69. As more fully alleged below, subsequent accessibility testing of Defendant's Website identified technical accessibility defects affecting the manner in which Website information, content, and interactive functionality are communicated to assistive technology. Those findings provide objective technical corroboration for the types of functional accessibility difficulties Plaintiff personally experienced but are separate from Plaintiff's firsthand observations and experiences.

70. Upon information and belief, the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans are proprietary AllSaints products and are not available for purchase from unaffiliated competing retailers. Plaintiff therefore cannot simply obtain these specific products from an unrelated competing retailer and continues to require meaningful access to Defendant's retail services in order to obtain the particular merchandise he desires.

71. Plaintiff remains specifically interested in purchasing the Hawthorne Slim-Fit Ramskull Shirt and Destroy Loose-Straight Leg Jeans. Plaintiff intends to return to Defendant's Website to obtain the information that he was previously unable to independently access, including the available colors and sizes of the Hawthorne Slim-Fit Ramskull Shirt and the

available colors, sizes, and laundering and care information concerning the Destroy Loose-Straight Leg Jeans.

72. Plaintiff further intends to use that information to determine the suitability and availability of the products before traveling to Defendant's AllSaints Meatpacking retail store at 402 West 13th Street to shop for and purchase the merchandise. If purchasing the desired products at Defendant's physical store proves impracticable, Plaintiff intends to use Defendant's Website to complete his contemplated purchases online.

73. Plaintiff is presently deterred from independently and fully using Defendant's Website because of the accessibility barriers he encountered on July 10, July 11, and September 15, 2026. Plaintiff reasonably expects that, absent remediation, he will again encounter barriers interfering with his ability to obtain the product information he requires when he returns to Defendant's Website for the concrete shopping purposes alleged herein.

74. Defendant's failure to provide Plaintiff with meaningful and independent access to the Website has therefore interfered with Plaintiff's ability to investigate merchandise he specifically desires, make informed purchasing decisions, pre-shop before patronizing Defendant's Manhattan retail establishment, and alternatively purchase the desired products online. Plaintiff seeks removal of these barriers so that he may return to Defendant's Website and independently obtain and utilize the same product information and retail services made available to sighted consumers

## TECHNICAL CORROBORATION OF WEBSITE ACCESSIBILITY BARRIERS

75. Plaintiff's firsthand difficulty accessing and obtaining information from Defendant's Website is independently corroborated by automated accessibility testing performed using SortSite. The resulting accessibility validation report evaluated portions of www.allsaints.com against WCAG 2.1 and Section 508 criteria and identified numerous accessibility defects affecting the manner in which Website content and interactive functionality are presented to users of assistive technology. The report itself cautions that automated testing cannot detect all accessibility issues and should be used alongside human testing. Accordingly, the SortSite findings are offered as technical corroboration of accessibility barriers identified within the portions of the Website examined, and not as a representation that automated testing identified every accessibility barrier existing on the Website. Exhibit B

## CLASS ACTION ALLEGATIONS

76. Plaintiff ISAIAH McKINNLEY brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.allsaints.com or Defendant's brick-and-mortar retail stores and were denied equal access to its products, services, and support due to persistent accessibility barriers during the relevant statutory period.www.allsaints.com

77. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.allsaints.com or Defendant's Manhattan retail store located at 402 West 13th Street, New York, New York 10014, and were similarly denied equal access due to the same systemic barriers.

78. Common questions of law and fact exist among the Class, including:

Whether www.allsaints.com qualifies as a "public accommodation" under Title III of the ADA;www.allsaints.com

Whether Defendant's Website and retail stores constitute "places or providers of public accommodation" under the NYCHRL;

Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;

Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in both the digital and physical marketplace.

79. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms and requires accessible digital interfaces to locate and shop at physical stores. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, unreadable product specifications, and inaccessible store locator features—that affect all

Class members

80. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

81. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the Website's accessibility barriers and ensure equal access to its retail stores.

82. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

83. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.allsaints.com or shop at Defendant's Manhattan retail store at 1551 Broadway and faced exclusion.

## <u>FIRST CAUSE OF ACTION</u>

**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

84. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

**42 U.S.C. § 12182(a).**

86. Defendant's website, www.allsaints.com, is a service offered to the general public and, as such, must be equally accessible to all potential consumers, including blind and visually impaired individuals.www.allsaints.com

87. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

88. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or

otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).**

89. The acts alleged herein constitute violations of Title III of the Americans with Disabilities Act and the regulations promulgated thereunder. Plaintiff, a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been diagnosed with retinitis pigmentosa, a degenerative retinal condition resulting in severe peripheral field loss and central acuity degradation, as documented in Exhibit A dated June 2025 (attached hereto). Plaintiff has been denied full and equal access to Defendant's website, www.allsaints.com; has not received services offered to non-disabled patrons; and has been subjected to inferior service due to persistent accessibility barriers. Defendant has failed to take prompt and equitable steps to remedy this discriminatory conduct, and the violations remain ongoing.

90. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**

**(Violations of the New York City Human Rights Law)**

**("NYCHRL")**

91. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

93. Defendant is subject to the NYCHRL because it owns and operates the website www.allsaints.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1). Defendant also maintains a brick-and-mortar retail store located at 402 West 13th Street, New York, New York 10014, further subjecting it to the jurisdiction of this Court under the NYCHRL.www.allsaints.com

94. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update or remove access barriers to its Website, rendering www.allsaints.com and its integrated services completely inaccessible to blind and visually impaired individuals. This

inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.www.allsaints.com

95. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

96. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

97. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

98. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

99. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

100. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

101. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

102. Defendant's actions violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

103. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

104. Plaintiff is also entitled to reasonable attorneys' fees and costs.

105. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION

**(New York State Human Rights Law)**

**("NYSHRL")**

106. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

107. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the

Defendants.

108. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

109. Defendant, at all relevant times to this action, own and operate a place of public accommodation, the subject Website and retail establishments, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

110. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

111. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

112. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

113. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating

against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

114. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

115. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for

making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

116. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

117. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

118. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act, in addition to reasonable attorneys' fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**FOURTH CAUSE OF ACTION**

**(Violation of New York State Civil Rights)**

**("NYCRL")**

119. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

120. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

121. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject

only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

122. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

123. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

124. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

125. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

126. Defendant has failed to take prompt and effective steps to halt and correct its discriminatory conduct, and continues to discriminate against Plaintiff and the Subclass

members.

127. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*.

128. Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for each instance of the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief)**

129. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

130. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

131. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

132. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

133. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

134. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

135. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

136. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State

Human Rights Law and the New York State Civil Rights Law;

137. Pre-judgment and post-judgment interest;

138. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

139. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York

November 5, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com